IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) etc., ) ) Plaintiff, ) ) v. ) ) INTERNATIONAL FIDELITY ) INSURANCE COMPANY, et al., ) ) Defendants. ) | ) ) ) ) CIVIL ACTION 16-0472-WS-C ) ) PUBLISH ) ) ) ) |

## ORDER

This matter is before the Court on the defendants' motion to compel arbitration and stay judicial proceedings. (Doc. 22). The plaintiff has filed a response and the defendants a reply, (Docs. 24, 26), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

According to the amended complaint, (Doc. 8), the entity plaintiff ("Bay South") entered two subcontracts with one defendant ("Stephens") to furnish labor and materials on two federal construction projects. The second defendant ("Fidelity") issued payment bonds for the protection of Bay South and other subcontractors, in accordance with Stephens' obligations under the Miller Act. Bay South fully performed, but Stephens refused to pay Bay South all amounts due. The amended complaint asserts six causes of action (three as to each of the projects): (1) suit on the payment bond, brought against both defendants pursuant to the Miller Act; (2) a breach of contract claim, brought against Stephens; and (3)

a state law claim for violation of the Alabama Prompt Pay Act, brought against Stephens.

The defendants seek to compel arbitration of all claims against Stephens; they do not seek to compel arbitration of the claims against Fidelity.[1] The defendants seek a stay of all proceedings herein, including with respect to the claims against Fidelity, pending arbitration.  (Doc. 22 at 2).

## DISCUSSION

The Federal Arbitration Act ("FAA") "reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (internal quotes omitted).  Thus, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  *Id.* (internal quotes omitted).

Both subcontracts contain the following provision:

> In the event of a dispute arising between CONTRACTOR and SUBCONTRACTOR under the Subcontract Agreement, at the election of the CONTRACTOR, and not otherwise, the dispute shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect.  Such arbitration shall be held in Birmingham, Alabama, or another location if mutually agreeable to the parties.

(Doc. 22-2 at 4; Doc. 22-3 at 4).  The plaintiff makes no argument that its claims for breach of contract, and those for violation of the Alabama Prompt Pay Act, fall outside the terms of this provision.  Neither does the plaintiff assert any objection or defense to the arbitrability of these claims.  As to the Miller Act claims asserted against Stephens, however, the plaintiff raises three objections – one statutory, one contractual, and one procedural.  The Court considers these in turn.

---

[1] Because the defendants do not seek to arbitrate the claims against Fidelity, the Court need not consider the plaintiff's arguments as to why it cannot be compelled to arbitrate those claims.  (Doc. 24 at 7-10).

**I. Statutory Prohibition on Arbitration.**

The plaintiff argues that "the plain language of the Miller Act rejects arbitration." (Doc. 24 at 2). The plaintiff relies on the following provision, added to the Miller Act by amendment in 1999:

> (c) A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is –
> (1) in writing;
> (2) signed by the person whose right is waived; and
> (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract.

40 U.S.C. § 3133(c). If a "waiver of the right to bring a civil action on a payment bond" includes an agreement to arbitrate Miller Act claims, then Section 3133(c) precludes arbitration of the Miller Act claims in this case, since the subcontracts – the only documents signed by the plaintiff – were executed before the plaintiff supplied labor and materials.[2]

As noted, the FAA "establishes a liberal federal policy favoring arbitration agreements," which "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (internal quotes omitted). "That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." *Id*. (internal quotes omitted). The question presented is whether Section 3133(c) constitutes such a command. "[T]he burden

---

[2] In the decades preceding passage of Section 3133(c), federal courts held or assumed that a claim under the Miller Act could be the subject of an arbitration provision. *See, e.g., United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705, 706 (2nd Cir. 1966) (in a suit by a subcontractor against the contractor and its surety brought exclusively under the Miller Act, "we hold the Miller Act contains nothing that in any way prevents appellees from compelling appellant to arbitrate the dispute between them as he previously had agreed to do."). The plaintiff agrees that, prior to enactment of Section 3133(c), the Miller Act "contained no protections from mandatory arbitration clauses." (Doc. 24 at 4). Thus, the plaintiff's position rises or falls on the back of that provision.

is on [the plantiff] to show that Congress intended to preclude a waiver of a judicial forum for [Miller Act] claims." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). "If such an intention exists, it will be discoverable in the text of the [Miller Act], its legislative history, or an inherent conflict between arbitration and the [Miller Act's] underlying purposes." *Id*. (internal quotes omitted).

While legislative history and inherent conflict are not irrelevant, statutory text is the most important consideration. As the Supreme Court has noted, when Congress has prohibited arbitration of statutory claims, it has done so with explicit "clarity." *CompuCredit*, 565 U.S. at 103. The two instances cited by the Supreme Court involved statutes expressly precluding resort to "arbitration" unless the agreement to arbitrate was reached after the dispute arose. *Id*. at 103-04. As the Eleventh Circuit has observed, "in every case the Supreme Court has considered involving a statutory right that does not explicitly preclude arbitration, it has upheld the application of the FAA." *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1331 (11th Cir. 2014) (internal quotes omitted). The *Walthour* Court concluded that, from among the three sources of congressional intention, "the Supreme Court would focus primarily on the statutory text." *Id*.

Section 3133(c) does not mention arbitration and so does not mirror the clarity of the statutes the Supreme Court has found to preclude arbitration. The plaintiff does not pretend otherwise. Instead, it argues that Section 3133(c) must be construed to preclude arbitration because "Congress vested exclusive jurisdiction over Miller Act suits in federal courts." (Doc. 24 at 4). It is true that "[a] civil action under this subsection must be brought" in federal court, 40 U.S.C. § 3133(b)(3), but this provision does not demonstrate that Section 3133(c) bars arbitration of Miller Act claims. The former provision has existed as long as the Miller Act, so the plaintiff's concession that the Miller Act did not prohibit arbitration prior to 1999 effectively concedes that Section 3133(b)(3) does not impact the question of arbitration. At any rate, the Supreme Court has made clear

that similar provisions in other statutes do not support a conclusion that arbitration of the statutory claims is prohibited.  *CompuCredit*, 565 U.S. at 101 (citing cases).[3]  "Thus, we have repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court," and "the contemplated availability of judicial action [can] be limited to judicial action compelling or reviewing initial arbitral adjudication."  *Id*. at 101-02.[4]

The plaintiff next argues that the phrasing of Section 3133(c) of its own weight unambiguously establishes that it bars arbitration of Miller Act claims.  (Doc. 24 at 3, 7).  Even ignoring the provision's failure to mention arbitration expressly, the Court cannot agree.  What Section 3133(c) voids are certain "waiver[s] of the right to bring a civil action on a payment bond."  The phrase, "bring a civil action," may reasonably be read to encompass only the filing of a lawsuit.  *See, e.g., Black's Law Dictionary* 219 (9th ed. 2009) ("bring an action" defined as "[t]o sue; institute legal proceedings").  Under this reading, Section 3133(c) precludes waivers of the right to file suit under the Miller Act unless certain conditions are met but does not restrict arbitration of the Miller Act claims once suit is filed.  Such a reading is consonant with *CompuCredit*'s statement that

---

[3] Two of the statutes (the ADEA and RICO) provided for concurrent state and federal jurisdiction.  The third (the Clayton Act), like the Miller Act, provided for exclusive federal jurisdiction.  *Aquatherm Industries, Inc. v. Florida Power & Light Co.*, 84 F.3d 1388, 1391 n.2 (11th Cir. 1996).

[4] "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  *Gilmer*, 500 U.S. at 26 (internal quotes omitted).  Thus, if resolution in a judicial forum constitutes a substantive right rather than a merely procedural one, waiver of that right through arbitration could be barred.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *see also Walthour*, 745 F.3d at 1336 (addressing the difference between a "non-waivable, substantive right" and a "waivable procedural mechanism").  The plaintiff, however, has not argued – much less demonstrated – that Section 3133(b)(3) creates a substantive right to a judicial resolution of a Miller Act claim.  Given *CompuCredit* and the cases cited therein, that would seem a Herculean task.

"contractually required arbitration of claims satisfies the statutory prescription of civil liability in court." 565 U.S. at 101.

As noted, legislative history and inherent conflict are not irrelevant to the inquiry, although it remains doubtful that either can overcome the lack of express, or at least clear, preclusion of arbitration in the statute itself. The plaintiff resists the defendants' efforts to introduce legislative history, (Doc. 24 at 3, 7), yet it insists that Section 3133(c) was passed "specifically to protect sub-contractors from the greedy government contractors who insert unconscionable boilerplate arbitration clauses into their sub-contracts." (Doc. 24 at 4). The plaintiff offers no support for this *ipse dixit*. In fact, prior to 1999 numerous courts had held that "it is possible for a supplier to waive his rights under the Act [if the] waiver [is] clear and explicit." *United States ex rel. Youngstown Welding and Engineering Co. v. Travelers Indemnity Co.*, 802 F.2d 1164, 1166 (9th Cir. 1986). *E.g., id.*; *United States ex rel. Friedrich Refrigerators, Inc. v. Forrester*, 441 F.2d 779, 782 (5th Cir. 1971); *United States ex rel. Clark-Fontana Paint Co. v. Glassman Construction Co.*, 397 F.2d 8, 10 (4th Cir. 1968); *United States ex rel. Industrial Contractors Corp. v. William Clairmont, Inc.*, 341 F. Supp. 940, 943 (D. Neb. 1972). These cases did not involve arbitration clauses but waivers of any remedy under the Miller Act. Section 3133(c) is thus perfectly consistent with a congressional desire to rein in these negations of relief on payment bonds without altering the recognized permissibility of arbitration clauses as providing the means of obtaining such relief.

Because Section 3133(c) does not unambiguously forbid the arbitration of Miller Act claims, the Court may review the legislative history of the amendment. *E.g., United States v. Mount Sinai Medical Center, Inc.*, 486 F.3d 1248, 1251 (11th Cir. 2007). The House Committee on Government Reform submitted a report recommending that H.R. 1219 (which proposed, among other revisions to the Miller Act, the addition of Section 3133(c)) be enacted into law. In discussing that provision, the committee stated the following:

> … [T]he bill would void waivers of Miller Act *payment bond protections* prior to commencing the work.
> …
> The bill also specifies workable limitations on the conditions under which the Act's *payment protections* could be waived by an intended beneficiary of those protections. … At the same time, the bill would preserve the right of a subcontractor or supplier to waive its Miller Act *right under the payment bond* once it has commenced performance under the contract.
> *This bill does not void subcontract provisions requiring arbitration or other alternative methods of resolving disputes*. Such provisions would remain enforceable with a claimant's Miller Act rights preserved by a timely suit that can be stayed pending the outcome of the subcontract dispute resolution procedure. The bill respects the freedom of the parties to the subcontract to specify means to resolve their disputes and the exclusive jurisdiction of the district court to decide issues arising under the Miller Act.

H.R. Rep. No. 106-277(I), at *2, *5 (1999) (emphasis added). It seems inescapable from this statement that the purpose of Section 3133(c) is to protect subcontractors and suppliers from waiving their rights to recover on the payment bonds required by the Miller Act and not to forbid the arbitration of such claims after suit is filed. The plaintiff, which understandably fought mightily to prevent the Court from considering the report, offers no alternative construction of its import. Even if such a thing were possible, it could not provide the "clarity" that the Supreme Court has required before finding a statutory preclusion of arbitration.

While not directly referring to "inherent conflict" between arbitration and the Miller Act's underlying purpose, the plaintiff reminds the Court that the Miller Act is "highly remedial in nature." (Doc. 24 at 4 (internal quotes omitted)). And so it is, with the result that it is "entitled to a liberal construction and application." *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 124 (1974) (internal quotes omitted). That status, however, is unhelpful to the plaintiff's position. "So long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue

7

to serve both its remedial and deterrent function." *Gilmer*, 500 U.S. at 28 (internal quotes omitted).

The plaintiff points to a sister court as having concluded that Section 3133(c) applies to agreements to submit claims to administrative dispute resolution. (Doc. 24 at 4-5). Because the opinion in *United States ex rel. Zurich American Insurance Co.*, 99 F. Supp. 3d 543 (E.D. Pa. 2015), is not based on the governing analysis as identified in *Gilmer*, *CompuCredit* and other cases, the Court does not find that opinion (to the uncertain extent it stands for the proposition for which the plaintiff cites it) persuasive.[5]

In summary, the plaintiff has not met its burden of demonstrating that Congress has precluded the arbitration of Miller Act claims.

## II. Scope of Arbitration Provision.

"[T]he federal policy favoring arbitration … cannot serve to stretch a contract beyond the scope originally intended by the parties." *International Underwriters AG v. Triple I: International Investments, Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008) (internal quotes omitted). The plaintiff argues that Stephens' Miller Act claim is not "a dispute arising … under the Subcontract Agreement" between them within the contemplation of the arbitration provision. (Doc. 24 at 10-11). The defendants disagree. (Doc. 26 at 10-11). Neither side addresses the

---

[5] The plaintiff, (Doc. 24 at 5), also considers *United States ex rel. Lighting and Power Services, Inc. v. Interface Construction Corp.*, 553 F.3d 1150 (8th Cir. 2009), to be helpful to its cause, due to the panel's statement that Section 3133(c) "cut[s] strongly against using equitable estoppel to weaken the Act's cause of action." *Id*. at 1156. The Court is unable to follow the plaintiff's unarticulated reasoning; in any event, such general judicial statements cannot substitute for the clear congressional statement required by the Supreme Court.

Finally, the plaintiff, (Doc. 24 at 5-6), quotes a former Fifth Circuit opinion for the proposition that agreements to litigate Miller Act claims in state court are void as violating the exclusive federal jurisdiction provision of Section 3133(b)(3). *United States ex rel. Portland Construction Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976). This case, of course, involves no such attempt, and *Portland Construction* says nothing about the impact of Section 3133(c) on arbitration agreements.

antecedent issue of whether the scope of the arbitration provision is to be determined by the Court or by the arbitrator.

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). That clear and unmistakable provision can arise from the parties' agreement to use particular arbitration rules that themselves call for the arbitrator to decide questions regarding the scope of arbitration. *Terminix International Co. v. Palmer Ranch Limited Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005) (where the parties agreed that the Commercial Arbitration Rules of the American Arbitration Association ("AAA") would apply, and where Rule 8(a) of those rules provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," the parties "clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) ("When the parties incorporated into the 2007 contract the rules of the [AAA], they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator.").

As noted, the subcontracts provide that arbitration will be conducted "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect." (Doc. 22-2 at 4; Doc. 22-3 at 4). As in *Terminix*, Rule 8(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Construction Industry Arbitration Rules and Mediation Procedures (July 2015) (available online at adr.org/construction). Because the parties have clearly and unmistakably provided that the arbitrator will decide the scope of their arbitration agreement, any question

whether the agreement extends to Miller Act claims must be decided by the arbitrator, not by the Court.

### III. Procedural Violations.

The motion to compel arbitration is supported by the affidavit of Stephens' president and by the two subcontracts. (Docs. 22-1 to -3). The plaintiff argues that the defendants' motion is brought under Rule 12(b)(6) and that, pursuant to Rule 12(d), the Court cannot consider the affidavit or subcontracts without transforming the motion into one for summary judgment, the resolution of which would be premature before the plaintiff is given an opportunity to conduct discovery. (Doc. 24 at 13-14). The plaintiff cites no judicial authority in support of its position.

The defendants do not identify their motion as being brought under Rule 12(b)(6), or under any other procedural rule. "Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013) (internal quotes omitted); *accord Maestre v. American Express Co.*, 2014 WL 12605504 at *1 (S.D. Fla. 2014). Alternatively, "[m]otions to compel arbitration … concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3) …." *Grasty v. Colorado Technical University*, 599 Fed. Appx. 596 (7th Cir. 2015). Both rules permit the consideration of material beyond the pleadings, and neither is subject to Rule 12(d). The plaintiff's *ipse dixit* that Rule 12(b)(6) applies furnishes no persuasive reason to reject these authorities.[6]

---

[6] Nor would it make any discernible sense to delay a ruling on the defendants' motion based on the consideration of outside materials. The plaintiff does not dispute that the subcontracts are genuine and that they accurately reflect the parties' agreement. The only purposes of the affidavit are to authenticate the subcontracts and to show the interstate commerce element necessary under the FAA – points with which the plaintiff does not disagree.

10

**IV. Stay of Proceedings.**

As noted, the defendants seek a stay of all proceedings herein pending arbitration of the claims against Stephens. The plaintiff, apparently cognizant of 9 U.S.C. § 3, voices no opposition to a stay with respect to the claims against Stephens. However, the plaintiff objects that a stay as to its Miller Act claims against Fidelity "would wreak damage on [the plaintiff] and … would subvert the rationale for the Miller Act." (Doc. 24 at 12). Its sole authority in support of denying a stay is *United States ex rel. Pensacola Construction Co. v. St. Paul Fire and Marine Insurance Co.*, 705 F. Supp. 306 (W.D. La. 1988).

The defendants do not suggest that Fidelity is entitled to a stay under Section 3. Instead, they argue for a discretionary stay as contemplated by the Supreme Court. (Doc. 22 at 14). "In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court … as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20 n.23 (1983). The defendants cite a wealth of cases granting or upholding a stay of a Miller Act claim against a surety pending arbitration of the subcontractor's claims against the contractor.[7] They also cite several cases questioning or criticizing the *Pensacola Construction* decision. The

---

[7] These include *Warren Brothers Co. v. Cardi Corp.*, 471 F.2d 1304 (1st Cir. 1973); *United States ex rel. Capolino Sons, Inc. v. Electric & Missile Facilities, Inc.*, 364 F.2d 705 (2nd Cir. 1966); *Agostini Brothers Building Corp. v. United States ex rel. Virginia-Carolina Electrical Works, Inc.*, 142 F.2d 854 (4th Cir. 1944); *United States ex rel. Maverick Construction Management Services, Inc. v. Consigli Construction Co.*, 873 F. Supp. 2d 409 (D. Me. 2012); *United States ex rel. Milestone Tarant, LLC v. Federal Insurance Co.*, 672 F. Supp. 2d 92 (D.D.C. 2009); *United States ex rel. MPA Construction, Inc. v. XL Specialty Insurance Co.*, 349 F. Supp. 2d 934 (D. Md. 2004); *United States ex rel. Tanner v. Daco Construction, Inc.*, 38 F. Supp. 2d 1299 (N.D. Okla. 1999); *United States ex rel. John Jamar Construction Services v. Travelers Casualty and Surety Co. of America*, 2015 WL 757858 (S.D. Tex. 2015); *United States ex rel. Vining Corp. v. Carothers Construction, Inc.*, 2010 WL 1931100 (M.D. Ga. 2010); *A.A. Bellucci Construction Co. v. United States Surety Co.*, 2010 WL 456775 (M.D. Pa. 2010).

defendants presented these cases and arguments at length in their principal brief, (Doc. 22 at 13-19), yet the plaintiff declined to acknowledge, much less counter, the defendants' presentation. Without belaboring the point, the Court concludes that, for reasons set forth in the authorities cited by the defendants, the plaintiff's Miller Act claims against Fidelity should be stayed pending arbitration of the plaintiff's claims against Stephens.

## CONCLUSION

For the reasons set forth above, the defendants' motion to compel arbitration and stay judicial proceedings is **granted**. This action is **stayed** pending resolution of the arbitration proceedings. The defendants are **ordered** to file and serve, on or before **April 10, 2017** and on or before the tenth day of every second month thereafter, a report detailing the status of the arbitration proceedings. The defendants are furthered **ordered** to file and serve, within fourteen days of the conclusion of arbitration proceedings, notification of same.

DONE and ORDERED this 7th day of February, 2017.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE